# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

**Appeal from**
**In re: Cummings Manookian**
**Case No. 3:19-bk-7235**

**Brian Manookian, Appellant**

**v.**

**Trustee Jeanne Ann Burton, Appellee**

**Case No. 3:23-cv-00918**

**Judge Aleta A. Trauger**

**ORAL ARGUMENT REQUESTED**

---

## APPELLANT'S OPENING BRIEF

---

# TABLE OF CONTENTS

I.   JURISDICTIONAL STATEMENT ......................................... 3

II.  INTRODUCTION .................................................... 4

III. STATEMENT OF THE ISSUES ......................................... 5

IV.  STANDARD OF REVIEW ............................................. 7

V.   STATEMENT OF THE CASE .......................................... 8

VI.  STATEMENT OF APPLICABLE LAW .................................. 18

VII. ARGUMENT ...................................................... 20

    A.  The Bankruptcy Judge's Refusal to Disclose Ex parte
       Conversations Alone Warrants Disqualification ....... 20

    B.  The Bankruptcy Judge's Actions in Response to Efforts
       to Discover the Content, Identities, and Extent of Ex
       parte Communications Warrant Disqualification. .... 26

    C.  The Bankruptcy Court's Reliance on a Vacated Order
       Constitutes Legal Error and Further Warrants
       Recusal. ............................................ 28

    D.  Recusal Is Even More Warranted in a Bench Trial,
       Where the Court Serves as Finder of Fact. ............. 29

VIII. CONCLUSION ................................................... 29

# I.    JURISDICTIONAL STATEMENT

Appellant Brian Manookian ("Appellant") appeals from the Bankruptcy Court's August 28, 2023 Order Denying Motion to Disqualify Bankruptcy Judge Charles Walker, Case No. 3:19-bk-07235 (Bankr. M.D. Tenn.) (Doc. 189). The Bankruptcy Court had jurisdiction over the matter under 11 U.S.C. §§ 1334 & 157. The Decision is a final order appealable under 28 U.S.C. § 158 (a)(1), or, in the alternative, Appellant requests that this Court consider his timely notice of appeal to be a motion for leave to file interlocutory appeal. Fed. R. Bankr. P. 8003(c). *In re Eggleston Works Loudspeaker Co.*, 253 B.R. 519, 521 (B.A.P. 6th Cir. 2000). The Court has jurisdiction to hear the appeal under either 28 U.S.C. § 158 (a)(1) or § (a)(3).

Appellant timely filed his Notice of Appeal on August 28, 2023, within 14 days of the entry of the Decision as prescribed by Fed. R. Bankr. P. 8002. (Doc. 190).

## II.   INTRODUCTION

This Appeal tracks and mirrors, in fact and law, the concurrent appeal pending in *Manookian PLC v. Burton*, Case No. 3:23-cv-00392 (hereinafter the "Adversary Proceeding Appeal" or the "AP Proceeding Appeal" ), filed April 20, 2023.

This Appeal was necessitated after the Bankruptcy Judge, *sua sponte*, began setting and hearing motions in the underlying Bankruptcy Case while his disqualification was pending in the Adversary Proceeding, rather than staying the same, pending the outcome of the appeal.  *See Manookian PLC v. Burton*, Case No. 3:23-cv-00392.  As a result, this brief largely mirrors the currently pending appeal before the Court in *Manookian PLC v. Burton*, Case No. 3:23-cv-00392.

### III. **STATEMENT OF THE ISSUES**

1.      Whether the Bankruptcy Court erred in failing to recuse itself where it belatedly revealed, but declined to detail, its receipt of and/or participation in multiple *ex parte* communications about this litigation with one or more attorneys representing parties in this litigation; and where the Court continues to decline to reveal the substance, date, and parties to each of the *ex parte* communications.

2.      Whether the Bankruptcy Court erred in failing to recuse itself where it quashed a subpoena to itself seeking to determine the specifics of the Court's *ex parte* communications and, in that Order, articulated additional biases and prejudices against the moving party; and, further directly stated that matter was now "tainted" against Appellant in this proceeding.

3.      Whether the Bankruptcy Court erred in basing its written recusal decision in this case on a vacated Tennessee state court order about Appellant (one of the parties to this litigation) – which was a highly prejudicial order issued by a state-court judge who was then disqualified from presiding in that action due to actual or perceived bias, and involved

judgments about the character of Appellant, a witness and party to this

matter – in which the Bankruptcy Judge sits as the fact-finder.

## IV.   STANDARD OF REVIEW

"When reviewing a bankruptcy court's decision in a 'core proceeding,' a district court functions as an appellate court, and applies the standard of review generally applied in the federal courts of appeals." *In re Matter of Webb*, 954 F.2d 1102, 1103-04 (5th Cir.1992) (footnotes omitted). Thus, under 28 U.S.C. § 158(a), in reviewing a bankruptcy court's decision, a district court applies a clearly erroneous standard of review to findings of fact, and a de novo standard of review to conclusions of law. *In re Baker & Getty Financial Services, Inc.*, 106 F.3d 1255, 1259 (6th Cir.1997). "On an appeal the district court ... may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings." *In re Buchanan*, No. 2:05-0114, 2006 WL 2090213, at *1 (M.D. Tenn. July 25, 2006) (citing Fed. R. Bankr. P. 8013).

# V.   STATEMENT OF THE CASE

## A.   The Bankruptcy Court Engages in Ex parte Communications About a Litigant

This is a bankruptcy proceeding filed by the law firm of Cummings Manookian.  Appellant Brian Manookian is the sole member and owner of Cummings Manookian.  The bankruptcy was filed on November 6, 2019. The Trustee instituted an adversary proceeding shortly thereafter on January 8, 2020.  Both the bankruptcy and adversary proceedings are presided over by the Honorable Charles M. Walker.

On March 17, 2023, the Bankruptcy Judge opined from the bench that Mr. Manookian was the critical witness to both of the proceedings, stating that "most of this is going to be driven by additional information that's available, not to the Trustee at this moment, but is locked away deep inside Mr. Manookian's brain somewhere." (Doc. 161-1, Transcript at P. 49:2-5). Judge Walker went on to state that, with respect to discovery, "Mr. Manookian holds the keys to the kingdom." *Id*. at 49:15-16.

As the hearing progressed, the Bankruptcy Court ordered, over the objection of Appellant, that certain depositions involving Brian Manookian be held in a secured location in the courthouse.  Appellant raised routine, logistical objections to this directive, primarily about parking and cost to travel downtown instead of taking depositions at attorneys' offices.

8

Surprisingly, in order to justify its rationale for this Order, the Bankruptcy Court raised what it termed the "100 pound gorilla in the room on that issue," namely, what Judge Walker believed to be Manookian's "past behavior before the tribunals."

The Bankruptcy Court then said "<u>I've had at least two lawyers call the Court and say they don't feel comfortable if your client is going to appear, and, you know, the Court takes those concerns very seriously</u> and makes no conclusion on whether they are valid, they are perceptions which drive behaviors of other parties." Transcript of Pretrial Conference, Page 84:11-23 (App'x at 094) (emphasis added).

At that hearing, well over a year into bench-trial cases over which he would preside, Judge Walker floored Appellant by casually admitting having participated in multiple *ex parte* conversations regarding Brian Manookian, the same very individual he had just identified as the key witness in those cases; but moreover, the Court then began holding forth on why it found Brian Manookian to be a particularly dangerous or unstable litigant: "[Brian Manookian's] past behavior before tribunals" justify ordering that depositions be conducted at the Courthouse over "security concerns" about Mr. Manookian.

9

As explained below, the Court's comments were not only factually wrong – Mr. Manookian is a successful trial attorney who has conducted hundreds of depositions without incident – they betrayed an extrajudicial animus toward the very person that Judge Walker has gone to great lengths to identify as the central factual witness in this case.

And that animus can solely be based on the Court's *ex parte* communications; indeed, Judge Walker himself identified those communications as the basis of his views toward Mr. Manookian, only after the fact relying on a vacated state trial order to justify his expressed judgments about a litigant. Unfortunately, as briefed below, the Court declined in the March 17, 2022 hearing – and continues to refuse – to provide any meaningful detail about its *ex parte* communications about Mr. Manookian – a key party and witness in this case. See Dkt. No. 161-1, Transcript 84:18-20 ("Judge Walker: I've had at least two lawyers call the Court and say they don't feel comfortable if your client is going to appear.")[1]

---

[1] No evidence or past proceedings in the case suggested that Mr. Manookian (who was not present at the hearing) posed a security concern or had conducted himself inappropriately. Mr. Manookian is a trial lawyer who recovered tens of millions of dollars on behalf of plaintiffs in the five years preceding this bankruptcy. Those actions necessarily included scores of depositions. Mr. Manookian has conducted or attended hundreds of depositions over the course of his career, including as a witness on multiple occasions. No court has ever found that he acted even remotely inappropriately, much less in a physically threatening manner, during a deposition.

**B.  The Bankruptcy Court Declines to Disclose the Substance of its *Ex Parte* Communications or Promptly Rule on a Motion to Disqualify**

After obtaining the transcript of the hearing, Appellant – as well as the parties to the adversary proceeding – promptly filed a motion asking the Court to disqualify itself and detail the dates, substance of, and parties to each of its *ex parte* communications, pursuant to 28 U.S.C. § 455(a) & (b)(1) and Canon Three of the Code of Conduct for Federal Judges (prohibiting judges from engaging in *ex parte* communications about a pending matter and, in the event an unauthorized *ex parte* communication is received, requiring prompt disclosure of the subject matter and an opportunity for the parties to respond).  Dkt. No. 161 (App'x at 106).

Rather than ruling on the motion or making the compulsory disclosure, the Court set an evidentiary hearing, on its own initiative, calling for "[p]resentation of evidence" on the motion, but not until more than six weeks later on June 29, 2022.  Dkt. No. 165 (App'x at 117).

The Court did not explain how or why it expected to receive testimonial evidence on the disqualification motion, nor did it explain <u>how Mr. Manookian could obtain evidence regarding the Court's own only recently revealed *ex parte* communications— definitionally known exclusively to the Court and not Appellant</u>.

Judge Walker did not—and to this day, has not—disclosed any additional information about the *ex parte* communications that formed the basis of his March 17, 2022 ruling.

## C.     The Bankruptcy Court Prevents the Adversary Proceeding Defendants from Obtaining Discovery in Advance of the Evidentiary Hearing and Again Declines to Recuse or Disclose the Substance of its Ex parte Communications

Facing an evidentiary burden and lacking information about the newly disclosed *ex parte* communications, the Adversary Proceeding Defendants ("the AP Defendants"), including Mr. Manookian through AP Defendant Manookian PLLC, reluctantly availed itself of the one tool a litigant can use to obtain evidence for presentation to a Court: a deposition. It noticed a limited deposition of Judge Charles M. Walker to take place two weeks before the evidentiary hearing set and insisted upon by Judge Walker.

Notwithstanding the atypical conduct of the Bankruptcy Judge in setting an evidentiary hearing of its own recusal without providing any disclosure of the same, a party noticing a deposition of a judge is admittedly and undoubtedly atypical. Sensitive to that fact, the AP Defendants went out of their way to ensure their request was minimally invasive and limited solely to their pending motion. To that end, AP Defendants specifically confined the scope of the deposition to two topics of inquiry: (1) Judge Walker and his staff's communications about this matter with third parties outside of court

proceedings and (2) Judge Walker and his staff's investigation into this matter, the parties, or witnesses outside of the Court record. Dkt. No. 177 (App'x at 118).

Within twenty-four hours of filing their Notice of Depositions, Judge Walker issued an order sua sponte quashing the Notice and declaring it unenforceable. Dkt. No. 178 (App'x at 002). Consistent with his earlier actions, rather than take the opportunity to disclose the substance or details of his *ex parte* communications, Judge Walker used the order to variously attack Mr. Manookian and the AP Defendants; accuse them of "tainting the proceedings"; and assign improper motives to their attempt simply to discover information that Judge Walker himself was required to disclose as a result of extrajudicial communications that did not involve Appellant.

Evidence of the same is saturated through the Order. Declining his fourth opportunity to simply provide a reasonable or innocent explanation for the *ex parte* communications, the Court wrote:

- "As to the first consideration, the Court finds that the Notice serves no purpose other than to waste the resources of the United States for private purposes... and is a misuse of the resources available in order to avail oneself of the justice provided by the bankruptcy system." Dkt. No. 178 (App'x at 007).

- "The request is inappropriate as the request for testimony from the sitting judge serves no purpose other than to taint the proceedings before the Court." Dkt. No. 178 (App'x at 007).

- The request for testimony of the judge sitting on the case is sought in order to contaminate the exercise of judicial and quasi-judicial responsibilities by federal judicial personnel." Dkt. No. 178 (App'x at 008).

- For the twelfth and thirteenth factors, deposing the judge on a case is a manipulation of the judicial system in an effort to taint the proceedings." Dkt. No. 178 (App'x at 008).

Having refused to promptly or voluntarily disclose the substance of his *ex parte* communications, Judge Walker prohibited Mr. Manookian or the AP Defendants from discovering the same via his testimony after unilaterally setting the matter for an evidentiary hearing.

Another point is necessarily made. Judge Walker referenced having "multiple" communications with more than one attorney. The AP Defendants and Mr. Manookian were able to question only one party during discovery – Counsel for the Trustee – about whether he had engaged in such communications. He admitted having done so but denied any specific recollections a year later. The problematic nature of his purported lack of recollection is compounded by the Judge's refusal to disclose details about the *ex parte* communications; importantly the Court referred to multiple such *ex parte* conversations, but only one such conversation has ever been identified.

At the eventual evidentiary hearing the Court declined to permit argument or evidence, and refused to provide an accounting of the *ex parte* communications.

Instead, the Court read a statement into the record that that it would decline to rule on the motion as a result of Appellant's appeal of his order quashing the notice of his deposition. Dkt. No. 182 (App'x at 125).

### D. Appellant Appeals Judge Walker's Order Quashing the Subpoena to Himself regarding his Ex parte Communications

After Judge Walker quashed the subpoena to himself seeking details of his *ex parte* communications, Appellant appealed, seeking an interlocutory ruling requiring the Bankruptcy Court to detail the substance of its *ex parte* communications, or in the alternative, to disqualify Judge Walker. Manookian PLLC v. Burton, Case No. 3:22-cv-00474.

Following briefing on the matter, this Court held that interlocutory appeal was not warranted, and that Appellant's request to disqualify Judge Walker was not yet ripe, given that Judge Walker, himself, had not yet ruled upon the motion. Manookian PLLC v. Burton, Case No. 3:22-cv-00474.

### E. Judge Walker Denies the Motion to Disqualify, Mistakenly Relying on a Long-Vacated State Trial Court Order.

With the appellate stay lifted, on April 4, 2023, the Bankruptcy Court took up the hearing on Appellant's Motion to Disqualify Judge Walker.

Judge Walker denied the motion at the hearing, and entered his written order detailing his reasoning and analysis the following day. (Dkt. No. 229.)

Notably, Judge Walker – once again – refused to actually provide any detail of the content of the Court's *ex parte* communications or even the participants to the conversations. Instead, he repeatedly suggested (without actually stating) that any such *ex parte* conversations he had referenced were possibly administrative or logistical in nature; accused Appellant and his attorneys of attempting to weaponize the issue; and yet again markedly declined simply to detail who he or his staff spoke to, the dates of the conversations, what was said, or why he did not promptly alert the other parties to the communications, as is required by the judicial code of conduct.

Relying on that long-vacated order – whose reversal had been filed with the Bankruptcy Court more than a year prior – Judge Walker stated:

> The record contains the rulings from other tribunals that have found Mr. Manookian to have acted in bad faith, engage in a pattern of obfuscation, and conduct himself in a reckless manner. Specifically, a Williamson County judge found that Mr. Manookian had knowingly, willfully, and intentionally violated a protective order and then attempted to mislead that court about that violation. That judge found Mr. Manookian's behavior regarding discovery matters to be so egregious that he imposed significant monetary sanctions against him. All of this is part of the record in this case. (Transcript Of Motion to Recuse Judge

Charles M. Walker (Docket No. 161) 21:2-11)), April 4, 2023.
Also, Finding in Order Denying Recusal (Docket No. 229 at 16).

**F.    The AP Defendants initiate an appeal of Judge Walker's refusal to recuse himself.**

In response to Judge Walker's decision not to recuse himself, the AP Defendants initiate and brief their appeal.  Manookian PLC v. Burton, Case No. 3:23-cv-00392.

**G.    In the interim, Judge Walker resumes the Underlying Bankruptcy Proceeding, setting sua sponte an evidentiary hearing in which Mr. Manookian was to serve as the primary witness.**

With the appeal of his refusal to recuse himself ongoing, Judge Walker chooses to sua sponte resume the underlying bankruptcy action by setting an evidentiary hearing following the reversal of his prior ruling regarding "this Court's entry of the Order Granting the Trustee's Motion for Compromise and Settlement and Finding that Brian Manookian Lack Standing." (D.E. 169.)

In furtherance of the same, Judge Walker, while the recusal appeal pending, sets an evidentiary hearing for May 25, 2023. (D.E. 169.)

**H.    Mr. Manookian requests that Judge Walker recuse himself in the underlying bankruptcy matter on the same grounds as the pending recusal appeal, which Judge Walker denies. This Appeal follows.**

Promptly thereafter, Mr. Manookian sought Juge Walker's recusal via written motion file on August 23, 2023 (D.E. 187). Judge Walker denied the same on August 28, 2023 (D.E. 189). This appeal followed.

## VI.   STATEMENT OF APPLICABLE LAW

"Unbiased, impartial adjudicators are the cornerstone of any system of justice worthy of the label." In re Al-Nashiri, 921 F.3d 224, 233–34 (D.C. Cir. 2019). Thus, "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455; see also Code of Judicial Conduct, Canon 2A ("A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary").

Under settled law, what matters "is not the reality of bias or prejudice but its appearance." Microsoft Corp. v. United States, 530 U.S. 1301, 1302 (2000) (statement of Rehnquist, C.J.) (quoting Liteky v. United States, 510 U.S. 540, 548 (1994)). Therefore, "all that must be demonstrated to compel recusal... is a showing of an appearance of bias... sufficient to permit the average citizen reasonably to question a judge's impartiality." In re Al-Nashiri, 921 F.3d at 234. "This inquiry is an objective one, made from the perspective of a reasonable observer who is informed of all the surrounding

facts and circumstances." Microsoft Corp., 530 U.S. at 1302 (citations omitted).

"It is of no consequence that the judge is not actually biased because § 455(a) 'concerns not only fairness to individual litigants, but, equally important, it concerns the public's confidence in the judiciary, which may be irreparably harmed if a case is allowed to proceed before a judge who appears to be tainted.'" In re Kensington Int'l Ltd., 353 F.3d 211, 220 (3d Cir. 2003) (citations omitted) (emphasis in original); Hall v. Small Bus. Admin., 695 F.2d 175, 178–79 (5th Cir. 1983) ("[T]his portion of the disqualification statute is to exact the appearance of impartiality . . . it focuses on what is revealed to the parties and the public, as opposed to the existence in fact of any bias or prejudice"); As the Fifth Circuit stated:

> This overriding concern with appearances, which also pervades the Code of Judicial Conduct and the ABA Code of Professional Responsibility, stems from the recognized need for an unimpeachable judicial system in which the public has unwavering confidence. As this court has noted, "the protection of the integrity and dignity of the judicial process from any hint or appearance of bias is the palladium of our judicial system." Any question of a judge's impartiality threatens the purity of the judicial process and its institutions.

Potashnick, 609 F.2d at 1111 (quoting United States v. Columbia

Broadcasting System, Inc., 497 F.2d 107, 109 (5th Cir. 1974)).

"Such a stringent rule, to be sure, may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties." In re Al-Nashiri, 921 F.3d at 234 (citation and quotation marks omitted). However, "to perform its high function in the best way, the Supreme Court has emphasized, justice must satisfy the appearance of justice." Id. (citation and quotation marks omitted).

Therefore, to "preserve both the reality and appearance of impartiality," a judge should recuse herself when her impartiality "might" be reasonably questioned. Id.; see also United States v. Microsoft Corp., 253 F.3d 34, 114–15 (D.C. Cir. 2001) ("The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible . . . Appearance may be all there is, but that is enough to invoke the Canons of § 455(a)." (quotation omitted)).

## VII.  ARGUMENT

### A.    The Bankruptcy Judge's Refusal to Disclose Ex parte Conversations Alone Warrants Disqualification

The Bankruptcy Court should be disqualified from this matter because it engaged in multiple prohibited *ex parte* communications about a critical party and witness to this case, Brian Manookian, and this proceeding

generally[2] with "at least two [unidentified] lawyers" while this action has been pending.[3]

Following those communications, the Court failed to promptly notify the parties of its repeated *ex parte* conversations as required by the Code of Conduct for United States Judges.[4]  Instead, the Court only disclosed their occurrences years later, and only then to justify the Court's order that depositions in this matter be conducted at a secure courthouse location.  In doing so, the Court attributed its order to unarticulated "concerns" about Brian Manookian which were communicated directly to the Court by undisclosed attorneys in various *ex parte* communications, but that neither the Court nor those attorneys disclosed to Appellant at the time.

As a result, Appellant was never able to respond to the *ex parte* representations, or even make a record regarding those improper communications for review by a superior court.  To this day, potentially years after the *ex parte* communications in this still-pending case, Appellant thus

---

[2] Brian Manookian is the sole member of the Debtor, Cummings Manookian, and the Sole Member of the Defendant, Manookian PLLC.

[3] Transcript of Pretrial Conference and Motion Hearing, March 17, 2022, Pages 84:15-85:11.  On April 21, 2022, the Manookian Parties learned that the Trustee, through her Special Counsel, has additionally had at least one improper *ex parte* communication with the Court. Deposition of Phillip Young, Transcript Forthcoming.

[4] Code of Conduct for United States Judges, Canon 3(A)(4).

remain in the dark as to the substance of those prohibited communications, although their clear corrosive effect on the Court has recently become clear.

28 U.S.C. § 455(a) states that "[a]ny . . . judge . . . shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." This recusal standard is objective; the relevant inquiry is whether a "reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality." Health Servs. Acquisition Corp. v. Liljeberg, 796 F.2d 796, 800 (5th Cir. 1986) (internal quotation marks omitted), aff'd, 486 U.S. 847 (1988); accord In re Haas, 292 B.R. 167, 177 (Bankr. S.D. Ohio 2003).

Canon Three of the Code of Conduct for Federal Judges provides that the Court shall not have *ex parte* communications, except in limited circumstances, and even then must give all parties prompt notice of the communications and an opportunity to respond.

> Except as set out below, <u>a judge should not initiate, permit, or consider *ex parte* communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers</u>. If a judge receives an unauthorized *ex parte* communication bearing on the substance of a matter, <u>the judge should promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested</u>. A judge may:
>
> > (a) initiate, permit, or consider *ex parte* communications as authorized by law;

(b) when circumstances require it, permit *ex parte* communication for scheduling, administrative, or emergency purposes, but only if the *ex parte* communication does not address substantive matters and the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the *ex parte* communication;

(c) obtain the written advice of a disinterested expert on the law, but only after giving advance notice to the parties of the person to be consulted and the subject matter of the advice and affording the parties reasonable opportunity to object and respond to the notice and to the advice received; or

(d) with the consent of the parties, confer separately with the parties and their counsel in an effort to mediate or settle pending matters.

(Emphasis added.)

Finally, Federal law mandates that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a). Engaging in improper *ex parte* communications in violation of the Federal Code of Conduct for Judges is, definitionally, conduct resulting in a judge's impartiality being reasonably questioned, warranting recusal.

Disqualification of a judge under these circumstances is governed by statute. See 28 U.S.C. § 455(a) & (b)(1) (requiring disqualification when the judge's "impartiality might reasonably be questioned" and when the judge

"has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding"). "The standard for determining whether a judge should be disqualified is an objective one: whether a reasonable person with knowledge of all facts would conclude that the judge's impartiality might reasonably be questioned." In re Haas, 292 B.R. 167, 177 (Bankr. S.D. Ohio 2003). Judicial remarks about a litigant "may [support a bias or partiality challenge] if they reveal an opinion that derives from an extrajudicial source[.]" Liteky v. United States, 510 U.S. 540, 555 (1994) (holding that Extrajudicial Source Doctrine applies to disqualification under § 455) (emphasis in original).

The Bankruptcy Court refused to apply the objective standard or otherwise disclose its *ex parte* communications about Appellant Manookian. Instead, it scheduled an evidentiary hearing, requiring Appellant to put on evidence regarding the Court's *ex parte* communications—evidence that is exclusively in the Court's possession. Then it prevented Appellant from obtaining that evidence when Appellant—reluctantly, and only to meet the additional evidentiary burden put on him by the Bankruptcy Court—issued a deposition Notice to the Court in order to obtain evidence before the hearing. The Court sua sponte quashed the Notice, preventing Appellant

from obtaining evidence he should not have been required to put on in the first place.

Judge Walker's refusal to simply be transparent about his *ex parte* communications warrants disqualification. He casually, and possibly unintentionally, referenced those communications to support his ruling on a discovery lacking any support from evidence in the record. When confronted about those communications, Judge Walker attacked the Appellant for simply seeking to learn whether his communications warranted recusal – an inquiry they were not required to make given the requirement that the Court affirmatively and promptly disclose such communications to litigants.

Judge Walker's actions in engaging in *ex parte* communications, refusing to detail those *ex parte* communications, and acting on those *ex parte* communications would lead any reasonable observer to question his impartiality. This alone requires recusal.

But Judge Walker's actions after properly being requested to detail his *ex parte* communications underscore the need for recusal. Immediately thereafter, he began issuing written orders announcing that the proceeding was "tainted" by any challenge to his impartiality (more appropriately described as an admission that Judge Walker was tainted against anyone issuing such a challenge) and alternatively attacking the parties and their

lawyers who sought to discover any details of his *ex parte* communications.

## B. **The Bankruptcy Judge's Actions in Response to Efforts to Discover the Content, Identities, and Extent of Ex parte Communications Warrant Disqualification.**

The Bankruptcy Court's response to Appellant's request that he simply make the disclosures already required by the Judicial Code of Conduct confirms the need for his disqualification. Rather than simply make the disclosure, Judge Walker issued a vitriolic order baselessly accusing Appellant of improprieties. These are those statements, as to Appellant's Request that the Judge simply comply with the existing Federal Judicial Canon:

- "The request is inappropriate as the request for testimony from the sitting judge serves no purpose **other than to taint the proceedings before the Court.**" Dkt. No. 178 (App'x at 007). Emphasis Added.

- The request for testimony of the judge sitting on the case is sought **in order to contaminate** the exercise of judicial and quasi-judicial responsibilities by federal judicial personnel." Dkt. No. 178 (App'x at 008). Emphasis Added.

- For the twelfth and thirteenth factors, deposing the judge on a case is a manipulation of the judicial system **in an effort to taint the proceedings**." Dkt. No. 178 (App'x at 008). Emphasis Added.

Strikingly, this is not a litigant, but rather a Judge, announcing, in his own view that this proceeding is "tainted" and "contaminated" because he

has been asked by Appellant to simply do his duty in disclosing *ex parte* communications. Setting aside every prior argument in this brief, Judge Walker, himself, confirmed that he no longer meets the objective criteria to preside over this case. He alone has deemed the mere attempt to require acquiescence to basic Canons of Judicial Conduct as not only a personal attack, but an effort to "taint" and "contaminate" the proceedings. Judge Walker's acknowledgment that the proceedings are personally tainted and contaminated in his view, require reassignment to another bankruptcy judge.

Finally, and to be clear, Appellant did not create this situation. Judge Walker did. When the Appellant learned of his inappropriate communications, he moved in writing for disclosures that Judge Walker should have already made. Appellant did not set the matter for evidentiary hearing; Judge Walker did. And Appellant would not have been required to seek his testimony had Judge Walker simply divulged the details of his *ex parte* communications. Even in seeking his testimony, Appellant made clear in the Notice of Deposition the exceedingly narrow scope of evidence he sought to obtain.

This situation is not the work of the Appellant, regardless of Judge Walker's accusations to the contrary. But the clearly corrosive effect of the

*ex parte* communications and extrajudicial investigation—which was by the Bankruptcy Court's own admission the basis for at least one ruling requiring that special conditions be placed upon Mr. Manookian—coupled with the Court's refusal to disclose details of the extrajudicial information, and its caustic subsequent order, makes clear that Judge Walker, under any objective standard, cannot fairly continue to preside over this matter.

This Court should order Judge Walker disqualified, and it should further order that he now make the disclosures mandated by the Code of Judicial Conduct—albeit belatedly. Appellant is entitled to learn the substance of the *ex parte* communications, including to determine which other orders or rulings of the Bankruptcy Court in this proceeding may have been influenced by extrajudicial communications or information. Such steps are necessary to maintain the integrity of these proceedings.

## C. <u>The Bankruptcy Court's Reliance on a Vacated Order Constitutes Legal Error and Further Warrants Recusal.</u>

Justifying its prior Order, the Bankruptcy Court found that Mr. Manookian "acted in bad faith, engaged in a pattern of obfuscation, and conducted himself in a reckless manner." (Dkt. No. 229 at 16). The sole basis for this finding is a sanctions order by a state trial court judge that was subsequently vacated on appeal and remanded to a different judge as a result of the first judge's lack of impartiality. Judge Walker's reliance on this

vacated order—the overturning of which was a key issue in Judge Crenshaw's decision overturning a prior order of Judge Walker in this case—to justify his impressions of a litigant provides a further basis for reasonably questioning his impartiality.

**D.** **Recusal Is Even More Warranted in a Bench Trial, Where the Court Serves as Finder of Fact.**

The Federal Judicial Center has observed that in a bench trial, "the judge's role is even more pivotal than in a jury trial." Recusal: Analysis of Case Law Under 28 U.S.C. §§ 455 & 144 (Fed. Jud. Ctr. 2002) at 59. "When the judge is the actual trier of fact, the need to preserve the appearance of impartiality is especially pronounced." Id. (quoting Alexander v. Primerica Holdings, Inc., 10 F.3d 155, 166 (3d Cir. 1993)). Here, Judge Walker serves as the decider of law and fact; disqualification is doubly warranted where he has engaged in *ex parte* communications and formed a definite opinion of a litigant unsupported by evidence in the record.

## VIII. CONCLUSION

For the foregoing reasons, Appellant respectfully requests that the Court reverse the Order Denying the Motion to Recuse (Dkt. No. 229) and enter an Order disqualifying the Bankruptcy Court and further requiring it to disclose all *ex parte* communications about the case such that Appellant can evaluate prior orders of the Court in light of those conversations.

Date: October 13, 2023                     Respectfully submitted,

                                           */s/ John Spragens*
                                           John Spragens (TN Bar No. 31445)
                                           Spragens Law PLC
                                           311 22nd Ave. N.
                                           Nashville, TN 37203
                                           T: (615) 983-8900
                                           F: (615) 682-8533
                                           john@spragenslaw.com

                                           *Attorney for Appellant*

Case 3:23-cv-00918    Document 6    Filed 10/13/23    Page 30 of 31 PageID #: 1974

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing Appellant's Opening Brief was filed October 13, 2023 and served electronically upon the following parties in interest as indicated on the receipt issued by the Court's electronic filing system:

Jay R. Lefkovitz
Lefkovitz & Lefkovitz, PLLC
312 East Broad Street, Suite A
Cookeville, TN 38501
(931) 528-5297 (T)
931-526-6244 (F)
JLefkovitz@lefkovitz.com

Counsel for Debtor Cummings Manookian

Phillip Young
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN 37067
(615) 465-6008 (T)
phillip@thompsonburton.com

Counsel for Trustee Jeanne Anne Burton


John P. Konvalinka

Grant, Konvalinka & Harrison, P.C.
633 Chestnut Street Suite 900
Republic Centre
Chattanooga, TN 37450-0900
(423) 756-8400 (T)
(423) 756-6518 (F)
jkonvalinka@gkhpc.com

Counsel for Creditor Grant, Konvalinka & Harrison, P.C.

Daniel Puryear
Puryear Law Group
104 Woodmont Boulevard, Suite 201
Nashville, TN 37205
(615) 255-4859 (T)
(615) 630-6602 (F)
dpuryear@puryearlawgroup.com

Counsel for Creditor D.F. Chase, Inc.


*/s/ John Spragens*

31